UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John E. Peet, | Civ. No. 11-2544 (SRN/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Associated Bank, N.A. Mendota Heights, Edina Realty, Inc., and Ken Meinke, | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendants Edina Realty and Ken Meinke's (the "Edina Defendants") Motion for Judgment on the Pleadings (ECF No. 19) and Defendant Associated Bank, N.A. Mendota Heights' (the "Bank" or "Associated Bank") Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, Failure to State a Claim (ECF No. 40). The Motions were referred to this Court pursuant to 28 U.S.C. § 636. (ECF Nos. 26, 45.) Plaintiff John Peet was represented by Lori Johnson and Adam Gillette.[1] Defendant Associated Bank was represented by Thomas Atmore and the Edina Defendants were represented by Stanford Hill. As set forth below, the Edina Defendants' Motion is granted and Defendant Associated Bank's Motion is granted in part and denied in part.

**I.     Background**

According to the Complaint, Plaintiff John E. Peet signed a lease at 316 West 7th Street, Red Wing, Minnesota on October 7, 2007 (the "Property"). (2d Am. Compl. ¶ 8.) The

---

[1] Ms. Johnson and Mr. Gillette are appearing in this matter as a part of the Federal Bar Association's Pro Se Project, with the Court's appreciation.

Property had numerous apartments, most of which were occupied by white men. (*Id.*) After Patricia Freeman, who shared an apartment with Plaintiff, moved out, Plaintiff was the only African American tenant. (*Id.*) In June 2008, Defendant Associated Bank acquired the Property through foreclosure and retained Defendants Edina Realty and Meinke to manage it. (*Id.* ¶¶ 9-10.)

In December 2008, Plaintiff began to complain about mold issues and a hole in his roof; his concerns went unaddressed. (*Id.* ¶ 11.) From May 2009 to August 2009, Plaintiff's water heater did not work despite requests to fix it. (*Id.* ¶¶ 13.) In June 2009, Plaintiff received a letter from Defendant Associated Bank indicating "Associated Bank intends to hold the property without tenants as it is listed for sale. You are likely to receive a Notice to Vacate in the near future." (*Id.* ¶ 14.) Shortly after receiving the June 2009 letter, two white men moved into the Property. (*Id.* ¶ 15.)

On July 15, 2009, Plaintiff returned to his apartment from a vacation to find his door wide open and a 60-day Notice to Terminate Tenancy posted. (*Id.* ¶ 18.) None of the other tenants, all of whom were white, received the notice. (*Id.*) After two tenants voluntarily moved out, Plaintiff and a white man named "Dave" were the only remaining tenants. (*Id.* ¶ 19.) In or around September or October 2009, Plaintiff overheard Defendant Meinke say to Dave: "Dave, you do not have to move, but that uppity nigger in front, the next time I tell him that I will have the sheriffs at the door." (*Id.* ¶ 20.)

Plaintiff has been involved in three lawsuits relevant to this case and the claims herein. (Affidavit of Stanford Hill Ex. A.) Plaintiff sought Emergency Relief pursuant to Minnesota's State Tenant Remedies Act, Minn. Stat. 504B.381, in August 2009. Plaintiff complained of various deficiencies at the Property, including problems with mold, hot water, and the sanitary

facilities. (*Id.* at 1-6.) On August 20, 2009, the Honorable Kevin Mark, District Judge, Goodhue County, dismissed the petition and entered judgment because "the conditions set forth in the Complaint have been fully resolved to all parties' satisfaction." (Hill Aff. Ex. A, at 7.)[2] On November 2, 2009, Plaintiff and Defendant Associated Bank appeared for a hearing for an unlawful detainer action brought by the Bank[3] and Plaintiff's conciliation court action.[4] (*Id.* at 8, 9.) In *Peet II*, the Judge Thomas Bibus, District Judge, Goodhue County, determined Plaintiff had a month-to-month tenancy and that repairs had been timely completed.[5] (*Id.* at 8.) Further, the court found that Peet's defenses had "<u>no</u> merit" and he had produced "no evidence to prove retaliation or discrimination." (*Id.* (emphasis in original)) In *Peet III*, on another pre-printed form with handwritten notes, Judge Bibus also dismissed Plaintiff's claims with prejudice. (*Id.* at 9.) Judge Bibus found that the issues before the court were "the subject of previous litigation." (*Id.*) The court went on to conclude that Plaintiff failed to prove any damages and could have mitigated his time without hot water by cooperating with attempts to fix it. (*Id.*)

Plaintiff brings three causes of action under the Fair Housing Act. Plaintiff alleges violation of, 42 U.S.C. § 3604(a) and § 3604(b) for discrimination in the rental of housing, and 42 U.S.C. § 3617 for interference, coercion, or intimidation.

---

[2] *Peet v. Associated Bank* (*Peet I*), No. 25-CV-09-2772 (Minn. Dist. Ct. August 20, 2009).
[3] *Associated Bank, NA v. Peet* (*Peet II*), No. 25-CV-09-3386 (Minn. Dist. Ct. Nov. 3, 2009).
[4] *Peet v. Associated Bank* (*Peet III*), No. 25-CO-09-335 (Minn. Conciliation Ct. Nov. 3, 2009).
[5] The court's order appeared on a pre-typed form with checkboxes and a small space to write. All of the court's findings were handwritten.

## II. Discussion

Defendant Associated Bank moves to dismiss for lack of subject matter jurisdiction. Applying the *Rooker-Feldman* doctrine, the Bank argues that this matter necessarily represents an attempt to review a state court ruling. Such review is precluded and strips the Court of jurisdiction. While the Edina Defendants did not make that argument in their original memorandum in support of their motion, the *Rooker-Feldman* doctrine defines the contours of the Court's subject matter jurisdiction, thus a finding that the doctrine applies would impel the Court to dismiss the case against the Edina Defendants as well. *See Thomas v. Basham*, 931 F.2d 521, 522-23 (8th Cir. 1991) ("In fact, jurisdiction issues will be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking, even if the parties concede the issue.") (citation omitted). Accordingly, defining the limits of *Rooker-Feldman* and distinguishing it from preclusion doctrines is a necessary precursor to disposing of these motions.

In the alternative, the Edina Defendants move for judgment on the pleadings and Defendant Associated Bank moves to dismiss for failure to state a claim.

### A. Subject Matter Jurisdiction

The *Rooker-Feldman* doctrine is a jurisdiction-stripping rule, which vests review of state court actions solely in the United States Supreme Court. *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004) (citing *Lemonds v. St. Louis Cnty.*, 222 F.3d 488, 492 (8th Cir. 2000)); *accord* 28 U.S.C. § 1257. The doctrine precludes lower federal courts from exercising jurisdiction over two types of cases. First, lower courts may not exercise jurisdiction over "the rare case styled as a direct appeal." *Id.* (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923)). Second, the Court may not exercise jurisdiction over "more common claims which

are 'inextricably intertwined' with state court decisions." *Id.* (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983)). The case at bar is not styled as a direct appeal and, in fact, Plaintiff denies that this case represents an attempt to review any state court action. Accordingly, whether the Court has subject-matter jurisdiction over this matter will turn on whether the complaint seeks relief on claims that are "inextricably intertwined" with any state court judgments.

The *Rooker-Feldman* doctrine is "confined to cases . . . brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).[6] Notably, the Court acknowledged that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . . ." *Id.* In other words, *Rooker-Feldman* and, for example, res judicata, are not mutually exclusive because they may both apply, or either could apply independently of the other.

*Exxon* explicitly stated that courts may exercise jurisdiction when a "party attempts to litigate[] in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293. Indeed, the Court held "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and *state law determines whether the defendant prevails under principles of preclusion*.'" *Id.* (alteration in original) (emphasis added) (citing

---

[6] *Exxon* is the most recent case that goes into great detail on the *Rooker-Feldman* doctrine. Accordingly, whether an opinion was written before or after *Exxon* certainly affects the case's persuasiveness. *Exxon* did not make significant changes to the doctrine, but rather it explained certain aspects of the doctrine's applicability and clarified the uncertainty surrounding it.

5

*GASH Assocs. v. Rosemount*, 995 F.2d 726, 728 (7th Cir. 1993)). Instead, the doctrine bars claims that attempt, in one way or another, to undo the effects of a state court action *Id.* at 293-94. Courts have routinely acknowledged *Exxon*'s guidance that the doctrine occupies a "narrow ground." *See, e.g.*, *Friends of Lake View Sch. Dist. Inc. No. 35 of Phillips Cnty. v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009).

Under the narrow scope of the *Rooker-Feldman* doctrine as clarified by *Exxon*, the Court has jurisdiction over this case. The Bank cites numerous cases for the proposition that "after a state court eviction order is entered [and] the evicted tenant asserts a Fair Housing Act claim[] in federal court," the doctrine strips a federal court of jurisdiction. (Def. Assoc. Bank Mem. at 9-10.) *See, e.g.*, *Allen v. IRMCO Management Co.*, 420 Fed. Appx. 597 (7th Cir. 2011) ("She seeks damages for costs incurred looking for new housing, emotional distress on being tossed out, and the value of property that she says was destroyed when the sheriff executed an Illinois court's eviction order."); *Babalola v. B.Y. Equities, Inc.*, 63 Fed. Appx. 534 (2nd Cir. 2003) (summary order) (affirming lower court because review would require a finding that eviction was inappropriate); *Fincher v. S. Bend Hous. Auth.*, 612 F. Supp. 2d 1009, 1015-16 (N.D. Ind. 2009) ("[T]he injury from which Fincher seeks relief was only complete when the St. Joseph County Superior Court entered its eviction order."); *Flowers v. Burton Wells, Ltd.*, 2002 WL 31307421 (N.D. Ill. 2002); *Fayyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 916-17 (N.D. Ill. 1998) (distinguishing between claims barred by res judicata and *Rooker-Feldman*; acknowledging that the *source* of the injury is the distinction; allowing a § 3617 claim based on denial of maintenance to proceed).[7] Each of those cases is inapposite.

---

[7] These claims all resulted from the eviction order – none of them would have materialized, but for the eviction.

Each case cited dealt with damages flowing from a state court order or judgment. The key difference between the case at hand and the above-cited, extra-jurisdictional cases is this: in each of the above cases, the damages complained of would not have materialized *but for* the state court order. That aligns with the Eighth Circuit and Supreme Court precedent that the *Rooker-Feldman* doctrine precludes complaints about the injury *caused by* the state court decision. *See Exxon*, 544 U.S. at 284; *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007) (citing *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998) (distinguishing between cases in which a plaintiff alleged an injury *caused by* a state court judgment and an injury that a state court *failed to remedy*)).

For example, in *Fayyumi*, the court allowed the claim of discriminatory denial of maintenance service because it did not result from the eviction order. *Fayyumi*, 18 F. Supp. 2d at 916-17. The court dismissed the claim based on § 3604 of the Fair Housing Act, however, because the plaintiffs suffered that damage as a result of the state court judgment. *Id.* at 917 ("These plaintiffs suffered damage once the state court enabled the defendants to proceed, by allowing the defendants to gain possession of their apartment."). Notably, the court drew a distinction between *Rooker-Feldman* and res judicata, acknowledging that the claims not barred by *Rooker-Feldman* could still be barred by Illinois preclusion principles. Thus, while the court did not have jurisdiction over the injuries stemming from the forcible entry and detainer action because they were enabled by the state court order authorizing defendants to enter, the court *did* have jurisdiction over the injuries caused by the failure to maintain the property, which preceded the state court judgment and formed the basis for the original state court complaint and the federal complaint.

7

The Bank argues that Plaintiff sued for damages and defended against eviction based on discrimination and retaliation in state court – which are the bases for the complaint currently before the Court. While that is true, that alone does not bring the complaint within the purview of the *Rooker-Feldman* doctrine. To apply the *Rooker-Feldman* doctrine whenever the underlying factual circumstances are identical in state and subsequent federal cases would eviscerate a state's preclusion doctrine. The Bank's position that "Plaintiff is necessarily asking this Court to reject and overrule the state court judgment" (Def. Assoc. Bank Mem. at 11.) is unavailing. A federal court is not "deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court." *Skit Int'l,* 487 F.3d at 1157 (citing *Exxon*, 544 U.S. at 292).

Put simply, *Exxon* requires that the state court loser be "complaining of an injury *caused by the state court judgment*." *Exxon*, 544 U.S. at 284. The injury *caused by* the state court judgment in this case was eviction and the attendant homelessness. The injury complained of in this case is the same exact injury that the state court ruled on – retaliation and discrimination resulting in deprivation of services and an attempt to evict. Each and every injury and allegation Plaintiff complains of predates the eviction order. Because the injuries predate the order, they could not be "caused by" the order and, thus, *Rooker-Feldman* is inapplicable. However, the analysis does not end here.

### B.   Judgment on the Pleadings and Failure to State a Claim

Each Defendant has also moved to dismiss Plaintiff's Complaint based on the allegations set forth therein. While the Edina Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and Defendant Associated Bank relies on Rule 12(b)(6), the Court considers the motions together. In deciding a motion for judgment on the

pleadings, the Court applies the same standard as for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court determines whether "a complaint contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To establish facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Indeed, the complaint need not include detailed factual allegations, but it must surpass the "speculative level." *Twombly*, 550 U.S. at 555.

While affirmative defenses generally cannot form the basis for a motion to dismiss, consideration of defenses is permissible "where the complaint *clearly* shows the existence [of] a defense." *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1118 (D. Minn. 2010) (citing *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1065 (D. Minn. 2003)) (alterations in *Stephenson*); *see also Sullivan v. Hyland*, 647 F. Supp. 2d 143, 148-49 (D. Conn. 2009) (citation omitted) (noting that it is "incumbent upon this Court" to consider previous cases involving the same facts as those before the court). Specifically, considering whether res judicata bars a claim is appropriate on a motion to dismiss, so long as it is "**definitively ascertainable** from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *Baratto v. Citizens Auto. Fin., Inc.*, Civ. No. 11-0105 (MJD/LIB), 2011 WL 3678676, at *2 (D. Minn. Aug. 1, 2011) (emphasis in *Baratto*) (quotation omitted).

In this case, the Edina Defendants asserted res judicata and collateral estoppel in their answer and this motion, and the Bank asserted res judicata and collateral estoppel in its motion and incorporated the Edina Defendants' arguments.

Accordingly, before turning to whether Plaintiff has pleaded sufficient facts to support the claims set forth in his Complaint, the Court must first resolve whether Minnesota's preclusion principles would bar this matter. As discussed below, res judicata, or claim preclusion, bars any claims whether or not asserted in previous litigation, and collateral estoppel, or issue preclusion, prohibits a litigant from challenging the final determination of a specific issue. The Court considers both preclusion principles in resolving these motions.

### 1. Res Judicata

A federal court sitting in diversity is required "to give preclusive effect to state court judgments whenever the court of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *see also* The Full Faith and Credit Act, 28 U.S.C. § 1738. Accordingly, Minnesota's preclusion rules are determinative of whether this Complaint may proceed.

Minnesota courts apply the doctrine of res judicata when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 220 (Minn. 2007).

Res judicata bars the relitigation of claims, even when restyled or renamed. *Dorso Trailer Sales, Inc. v. Am. Body & Tralier, Inc.*, 482 N.W.2d 771, 773-74 (Minn. 1992). Plaintiffs must assert "all alternative theories of recovery in the initial action." *Dorso Trailer*

*Sales,* 482 N.W.2d at 774. Indeed, once there is a final adjudication on the merits, a party may not relitigate claims arising from the same set of circumstances, even under new or alternative theories. *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000). Res judicata bars "not only claims as to matters actually litigated, but also as to every matter that *might have been litigated.*" *Id.* (emphasis in original) (citing *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 445 (Minn. 2000)); *see also Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) ("Res judicata applies not only to all claims actually litigated, but to all claims that could have been litigated in the earlier action."). Courts consider whether the same evidence would be used in subsequent litigation as a litmus test for determining whether certain claims are barred by former judgments. *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967).

There is no question here that the factual circumstances are identical in the state court action and the instant Complaint. In the previous litigation, Plaintiff complained that the Bank did not respond to his complaints of lack of hot water, unsanitary living conditions, and mold in his home. Those are the same problems about which Plaintiff complains here. (*See, e.g.*, 2d. Am. Compl. ¶ 1.) Further, there is no question that the Bank was involved in each state court action. Whether the Edina Defendants may rely on res judicata, however, requires some inquiry. As noted above, to assert the defense of res judicata, a party must be in privity with an earlier party. Parties are in privity if they are so connected that there is an identifiable interest and they may be affected by the litigation. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011). More specifically, parties are in privity where their interests are represented by a party to the action. *Id.* (citing *Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 200 N.W.2d 45, 47 (Minn. 1972)). The Minnesota Supreme Court has held that circumstances

establishing privity "cannot by precisely defined" and that "determining whether parties are in privity requires a careful examination of the circumstances of each case." *Id.* (citing *Margo-Kraft Distribs., Inc.*, 200 N.W.2d at 47).

Here, the Edina Defendants may easily be classified as the Bank's privities. First and foremost, the Bank retained Edina Realty as its agent to market the Property for sale. Accordingly, as the Bank's real estate agent, any actions taken by Defendant Edina Realty would be attributable to the Bank. Moreover, as the Bank's agent, the Edina Defendants may have been subject to derivative liability should the Bank have been financially liable to Plaintiff as a result of the state court action. Finally, it is quite clear that the Edina Defendants' interests were represented by the Bank in the state court action. Indeed, as co-defendants here, their interests are almost identically aligned. Therefore, the Court finds that privity exists among the Defendants for causes of action brought by Plaintiff in connection with his eviction from the Property.

Furthermore, it is not fairly debatable that there was a final judgment on the merits in the state court. Indeed, in each of the three cases, the presiding judge made factual findings and conclusions of law, and entered judgment on the merits. In each of the cases, Plaintiff could have appealed the court's decision. *See* Minn. Stat. 491A.02, subd. 6 (removal of cases from conciliation court for de novo review).

Plaintiff argues that dispositions on preprinted forms with handwritten annotations cannot form the basis for the application of res judicata. The Court categorizes this objection as an argument concerning whether there was a full and fair opportunity for Plaintiff to litigate his claims. The Court finds that Plaintiff did have a full opportunity to litigate his claims in the state court. First, Plaintiff's reliance on conciliation court's $7,500 jurisdictional

limit is unavailing. The Jurisdictional amount is the maximum that can be heard in conciliation court, but the state district courts have original jurisdiction in all civil and criminal cases, as well as appellate jurisdiction as prescribed by law. *See* Minn. Const. art. VI, § 3. More importantly, Plaintiff had the opportunity to appeal the conciliation court decisions to Minnesota district court for a full trial de novo which he did not do. Finally, Plaintiff was afforded a full opportunity to call and question witnesses. It appears from the record that Judge Bibus offered some guidance in the framing of questions and laying of foundation in an effort to ensure that Plaintiff asked the questions necessary to establish a cause of action, if one existed.

Plaintiff also relies heavily on his having appeared pro se in the state court proceedings. Plaintiff's decision to proceed pro se, however, was his decision. Neither Minnesota courts nor federal courts provide a constitutional right to counsel in civil cases. *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980) (per curiam) (citation omitted); *Ealey v. $379.00 in U.S. Currency*, No. C2-95-2370, 1996 WL 192980, at *3 (Minn. Ct. App. Apr. 23, 1996) (citation omitted).

Finally, Minnesota courts have consistently accorded preclusive effect to its conciliation courts. *See, e.g.*, *Mattsen v. Packman*, 358 N.W.2d 48, 49 (Minn. 1984) (specifically declining to "carv[e] out an exception" for the application of preclusion principles to conciliation court decisions). The Court declines to make an exception here that would allow Plaintiff to relitigate claims he brought or could have brought in previous state court actions. Therefore, Plaintiff had a full and fair opportunity to litigate his claims before the state court.

Thus, Plaintiff's claims are barred by the doctrine of res judicata because he has already litigated claims based on the same nucleus of facts. Accordingly, Plaintiff's Complaint should be dismissed.

### 2. Collateral Estoppel

Alternatively, Plaintiff's claims are barred by collateral estoppel, as well. Collateral estoppel bars the relitigation of discreet issues "which are both identical to those issues already litigated by parties in a prior action and necessary and essential to the resulting judgment." *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982) (citations omitted). Collateral estoppel bars claims where: (1) an issue is identical to one in a prior adjudication; (2) the prior adjudication rendered a judgment on the merits; (3) the estopped party was a party, or was in privity with a party, from the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the issue. *Id.* (citing *Victory Highway Vill., Inc. v. Weaver*, 480 F. Supp. 71, 74 (D. Minn. 1979)).

Plaintiff, the estopped party, was afforded an opportunity to litigate his case in the state court and that adjudication rendered a judgment on the merits. Having already determined those issues above, the only matter before the Court is whether the issues from the earlier adjudications are identical to those asserted here.

Plaintiff's claims all turn on whether Defendants' alleged actions were based on Plaintiff's race. Indeed, Plaintiff claims race was the impetus for all of Defendants' allegedly wrongful actions. (*See* 2d Am. Compl. ¶¶ 1, 25, 33, 37.) Correspondingly, Plaintiff alleged in the state court action that he was deprived of certain rights based on his race. In each of the previous actions, the presiding judge specifically found that Plaintiff's claims of discrimination had no merit, and that there was no evidence of retaliation or discrimination.

Those issues, having been finally determined in previous actions, are accorded preclusive effect here because a finding of discrimination is necessary to success on Plaintiff's claims.

Therefore, because Plaintiff's claims are premised on discrimination and retaliation, issues which have already been decided, Plaintiff is precluded from relitigating those issues here. Plaintiff cannot establish violations of the claimed provisions of the FHA without a finding of discrimination or retaliation, thus claims that require a finding of discrimination or retaliation in connection with the facts determined in the state court actions must necessarily fail as a matter of law. Accordingly, on the alternative ground of issue preclusion, the Court recommends Plaintiff's Complaint be dismissed with prejudice.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

(1) Defendants Edina Realty, Inc. and Ken Meinke's Motion for Judgment on the Pleadings (ECF No. 19) be **GRANTED**.

(2) Defendant Associated Bank's Motion to Dismiss (ECF No. 40) be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**; and

    b. The Motion to Dismiss for Failure to State a Claim is **GRANTED**.

(3) Plaintiff's Second Amended Complaint be **DISMISSED WITH PREJUDICE**.

(4) **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 20, 2012                              s/ *Jeanne J. Graham*
                                                  JEANNE J. GRAHAM
                                                  United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 6, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.